UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| HARRY NYEMAH,<br><br>      Petitioner,<br><br> vs.<br><br>UNITED STATES OF AMERICA,<br><br>      Respondent. | 4:24-CV-04057-KES<br><br>ORDER ADOPTING AS MODIFIED REPORT AND RECOMMENDATION AND DISMISSING NYEMAH'S PETITION |

  After pleading guilty to Possession of a Stolen Firearm, 18 U.S.C. § 922(j), petitioner, Harry Nyemah, filed a petition to vacate his conviction, arguing he received ineffective assistance of counsel because he alleges his lawyer failed to advise him of the immigration consequences of pleading guilty to such offense. Docket 1; 22-CR-40003, Docket 1; 22-CR-40003, Docket 32 ¶ 3.[1] Magistrate Judge Veronica Duffy issued a Report and Recommendation, recommending the court dismiss Nyemah's petition. Docket 4. Nyemah timely objects. Docket 8. After reviewing Nyemah's petition, the Report, and Nyemah's objections, the court issues the following order.

---

[1] To reference items in this instant civil docket, the court simply refers to the relevant docket entry. To reference items in Nyemah's underlying criminal case, 22-40003, the court begins with the case number, followed by the relevant docket entry.

**I.    Background**

On July 21, 2022, Nyemah pleaded guilty to one count: Possession of a Stolen Firearm, 18 U.S.C. § 922(j). 22-CR-40003, Docket 1; 22-CR-40003, Docket 32 ¶ 3; 22-CR-40003, Docket 40. The court sentenced Nyemah to 33 months in custody and entered final judgment on November 1, 2022. 22-CR-40003, Docket 59.[2] The court subsequently reduced Nyemah's sentence to 17 months followed by two years of supervised release, and Nyemah concluded his sentence sometime before March 18, 2024. 22-CR-40003, Docket 76; 22-CR-40003, Docket 77; Docket 1 at 6 (showing Nyemah filed petition from ICE facility).[3]

For most individuals, release from federal prison means a new opportunity to move on with their lives. While a felony conviction often has collateral consequences that will reverberate throughout one's life, most individuals can start anew, reconnect with loved ones, and build a new life in the community.

---

[2] The court pronounced Nyemah's sentence on October 31, 2022, but for purposes of determining the timeliness of Nyemah's petition, the relevant date is the date of the "entry of . . . the judgment." Fed. R. App. 4(b)(1)(A)(I); *see also* Fed. R. App. 4(b)(6)("A judgment or order is entered for purposes of this Rule 4(B) when it is entered on the criminal docket."); *United States v. Mendoza*, 698 F.3d 1303, 1305 (10th Cir. 2012) (observing that the time of sentencing is not the correct date that triggers notice to appeal deadline but rather the date upon entry of judgment, which in turn depends on when the judgment is entered on the criminal docket).

[3] The court knows Nyemah was not in a federal prison at the time he filed his petition because Nyemah filed his petition from Desert View Annex, and the court takes judicial notice that Desert View Annex is an ICE detention facility. *See* Docket 1 at 6.

But most is not all. For non-citizens of this country like Nyemah—release from federal prison can (and indeed, often *will*) mean something quite different. *See* 22-CR-40003, Docket 48. Rather than acquiring the opportunity to re-enter society, non-citizens convicted of certain offenses are subject to the exact opposite: mandatory deportation. *See* 8 U.S.C. § 1227(a)(2)(A) (listing criminal offenses that render non-citizens convicted of such offenses deportable); *see also Lee v. United States*, 582 U.S. 357, 361-62 (2017). One class of these offenses is an aggravated felony. *See* 8 U.S.C. § 1227(a)(2)(A)(iii). And an aggravated felony, includes, among many other offenses, the offense to which Nyemah pleaded guilty, Possession of a Stolen Firearm. 8 U.S.C. § 1101 (a)(43)(E) (making a violation of 18 U.S.C. § 922(j) an aggravated felony); 22-CR-40003, Docket 1; 22-CR-40003, Docket 32 ¶ 3. Thus, once Nyemah completed his 17-month sentence, immigration law is clear: Nyemah became subject to mandatory deportation. *See* 22-CR-40003, Docket 76; 8 U.S.C. § 1227(a)(2)(A)(iii); 8 U.S.C. § 1101 (a)(43)(E). *See also Torres v. Lynch*, 578 U.S. 452, 454-55 (2016).

Magistrate Judge Duffy and this court both advised Nyemah of this potential consequence prior to his guilty plea. Specifically, after advising Nyemah of the maximum possible penalties for the charges he faced at his initial appearance, Magistrate Judge Duffy stated, "And Harry, in addition to the penalties that Mr. Clapper just outlined, because you are not a United States citizen, if you are convicted of this crime, there is the possibility you could be deported." Similarly, after learning Nyemah was born in the Ivory

3

Coast, this court engaged in the following discussion with Nyemah at the change of plea hearing.

> Court: Have you become a United States citizen?
>
> Nyemah: No.
> …
> Court: Because you are not a citizen of the United States, in addition to the other possible penalties that you're facing, if you plead guilty, you may be subject to deportation, exclusion, or voluntary departure, and you may be prevented from obtaining U.S. citizenship in the future. Do you understand that?
>
> Nyemah: Yes.

Nyemah's petition alleges that his lawyer did not advise him of potential deportation consequences at any point during plea negotiations. Docket 1 at 2.[4] Although Magistrate Judge Duffy and this court so advised Nyemah, his lawyer's failure to advise Nyemah of such consequences matters: criminal defense attorneys—not courts—have a constitutional duty under the Sixth Amendment to advise defendants that such defendants are subject to deportation so long as the deportation consequences of pleading guilty are clear. *See Padilla v. Kentucky*, 559 U.S. 356, 360, 369 (2010); *United States v. Ramirez-Jimenez*, 907 F.3d 1091, 1094 (8th Cir. 2018). An individual who has pleaded guilty to an offense (who has successfully shown his lawyer failed to properly advise him of deportation consequences) is entitled to post-conviction

---

[4] Because neither Magistrate Judge Duffy nor this court held an evidentiary hearing, the court must accept Nyemah's factual allegations in his petition as true so long as such assertions are not contradicted by the record, inherently incredible, or conclusions rather than statements of fact. *See Love v. United States*, 949 F.3d 406, 411 (8th Cir. 2020).

4

relief so long as he can show a reasonable probability that he would have gone to trial or that his lawyer could have negotiated a favorable plea deal that avoids deportation. *See Lee*, 582 U.S. at 364-65 (trial); *United States v. Rodriguez*, 49 F.4th 1205, 1213 (9th Cir. 2022) (explaining that to prove prejudice, petitioner "must demonstrate that absent his attorney's incompetence, [petitioner] would 'rationally' have 'rejected the plea bargain' and would 'either have gone to trial or received a better plea bargain' instead" (quotations omitted and cleaned up)); *Doe v. United States*, 915 F.3d 905, 911 (2d Cir. 2019) (recognizing prejudice if petitioner can show reasonable probability that petitioner could have negotiated a plea that did not impact immigration status); *Rodriguez-Penton v. United States*, 905 F.3d 481 (6th Cir. 2018) (holding that petitioner "may demonstrate prejudice if he can show that, had he known about the risk of adverse immigration consequences, he would have bargained for a more favorable plea"); *United States v. Swaby*, 855 F.3d 233, 243 (4th Cir. 2017) ("[Petitioner] has demonstrated a reasonable likelihood that, but for his counsel's erroneous advice, he could have negotiated a different plea agreement. As a result, [counsel]'s deficient performance prejudiced [petitioner]'s defense."); *Cf. DeBartolo v. United States*, 790 F.3d 775, 779 (7th Cir. 2015) (explaining that petitioner "could have tried to negotiate a different plea deal for an offense that d[id] not make deportation mandatory").

Alleging that his lawyer failed to advise him of any potential deportation consequences despite such consequences being clear and that he would have gone to trial or secured a more favorable plea deal, Nyemah filed a petition

5

seeking to vacate his conviction in March 2024. *See* Docket 1. The Report recommends dismissal because Nyemah's petition is time barred and because it fails on the merits. Docket 4. Timeliness is threshold requirement, so the court begins with whether Nyemah's petition is timely, which in turn requires the court to determine how to properly characterize it. *See Grady v. United States*, 269 F.3d 913, 919 (8th Cir. 2001).

## II. Coram Nobis or 2255

Nyemah styled his petition as one under the writ of error *coram nobis*, an "ancient common law remedy that modern federal courts are authorized to issue under the All Writs Act, 28 U.S.C. § 1651(a)." *Baranski v. United States*, 880 F.3d 951, 954 (8th Cir. 2018). But petitioners may not seek relief under a *coram nobis* writ if they are in federal custody. *See United States v. Noske*, 235 F.3d 405, 406 (8th Cir. 2000); *see also Baranski*, 880 F.3d at 956. That is so, because petitioners may only file a *coram nobis* writ if they have no other available or effective remedy. *See United States v. Payne*, 644 F.3d 1111, 1112-13 (10th Cir. 2011) (collecting cases). Because federal petitioners in custody have 28 U.S.C. § 2255 petitions available to them, such petitioners may not file *coram nobis* writs. *See id.*; *Noske*, 235 F.3d at 406. In deciding whether a petitioner is "in custody," the relevant time period to evaluate is the time when the petition was filed. 3 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure Crim.* § 630 (5th ed. 2023) (explaining that the "critical moment in determining custody is when the § 2255 motion is filed").

6

At the time Nyemah filed his petition, Nyemah was still serving his two-year term of supervised release because his 17-month custody sentence ended roughly in March 2024 (after accounting for good-time credits) and Nyemah filed his petition in Mid-March. Docket 1 at 6; 22-CR-40003, Docket 77; 22-CR-40003, Docket 57 (showing Nyemah was sentenced on October 31, 2022). A petitioner who is under supervised release is still "in custody" for purposes of § 2255. *See Masten v. United States*, 752 F.3d 1142, 1146 n.2 (8th Cir. 2014) (recognizing supervised release "satisf[ied]" [§ 2255]'s 'custody' requirement"); *see also Clarke v. United States*, 703 F.3d 1098, 1101 (7th Cir. 2013). Thus, because Nyemah is "in custody," § 2255 is available to Nyemah and as a result he may not proceed via a *coram nobis* writ. *See Noske,* 235 F.3d at 406; *Masten,* 752 F.3d at 1146 n.2.[5]

Nyemah argues § 2255 is unavailable because, on his calculation, his petition is untimely. *See* Docket 1 at 2. But even if his petition is time-barred, such a reality does not make § 2255 unavailable, and thus Nyemah cannot do an end-around by filing a writ of *coram nobis*. *See Payne,* 644 F.3d at 1113 ("It is irrelevant that a § 2255 motion would have been untimely by the time he

---

[5] The court need not decide whether Nyemah's detention status in his immigration proceedings—a direct consequence from his conviction in his criminal case—makes him "in custody" for purposes of his § 2255 petition which attacks such conviction, because even if it does not, Nyemah was on supervised release from his criminal case. *See* 8 U.S.C. § 1227(a)(2)(A)(iii) (making a non-citizen convicted of an "aggravated felony" subject to mandatory deportation); 8 U.S.C. § 1101 (a)(43)(E) (making a violation of 18 U.S.C. § 922(j) an aggravated felony); *see also Torres,* 578 U.S. at 454-55. For reasons explained, an individual on supervised release is still in custody for § 2255 purposes.

7

filed his petition for a writ of *coram nobis*."); *Trenkler v. United States*, 536 F.3d 85, 98-99 (1st Cir. 2008) (explaining that petitioner's failure to meet procedure requirements and timely file a § 2255 petition does not allow petitioner to resort to a writ of *coram nobis*); *Matus-Leva v. United States*, 287 F.3d 758, 761 (9th Cir. 2002) ("[Petitioner]'s argument that a § 2255 petition is not really available to him because it is time barred under the Antiterrorism and Effective Death Penalty Act, is unavailing."); *Barber v. United States*, 2015 WL 13238605, at *2 (E.D. Va. Dec. 4, 2015) ("The mere fact that a motion under § 2255 would now be time-barred, does not make the remedy unavailable."); *Cf. Abdullah v. Hedrick*, 392 F.3d 957, 959 (8th Cir. 2004) (explaining that for purposes of § 2255's savings clause, § 2255 is "not inadequate or ineffective merely because . . . a remedy under that section is time-barred"). To hold otherwise would gut § 2255's time-requirements. Because Nyemah may not file a writ of *coram nobis*, the court construes Nyemah's petition as one filed under § 2255. *See Barajas v. United States*, 877 F.3d 378, 379 n.2 (8th Cir. 2017) (explaining courts are not bound by a petitioner's label to a petition).

### III.     Section 2255

Magistrate Judge Duffy did not hold an evidentiary hearing, but such a hearing is not necessary if "the motion, files, and record conclusively show [the petitioner] is not entitled to relief." *Roundtree v. United States*, 751 F.3d 923, 925 (8th Cir. 2014). A petitioner is not entitled to relief if he files an untimely petition that is not subject to equitable tolling. *Anjulo-Lopez v. United States*, 541 F.3d 814, 819 (8th Cir. 2008).

To timely file a § 2255 habeas petition, petitioners generally must file such petition within one year. *See* 28 U.S.C. § 2255(f); *see also United States v. Jackson*, 25 F.4th 604, 606 (8th Cir. 2022). As relevant here, that year begins "the latest of" either (1) the date on which the judgment of conviction becomes final; or (2) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence. 28 U.S.C. § 2255 (f)(1), (f)(4).

The court begins with whether Nyemah's petition is timely under § 2255(f)(1). Under § 2255(f)(1), the clock starts on the date in which the judgment of conviction becomes final. In circumstances where the defendant does not appeal, a conviction becomes final once the deadline to file a notice of appeal has passed. *See Fletcher v. United States*, 858 F.3d 501, 504 (8th Cir. 2017), *overturned on other grounds by Borden v. United States*, 593 U.S. 420 (2021). The deadline to file a notice of appeal of a federal conviction is 14 days after the court issues final judgment. *See* Fed. R. App. Proc. 4(b)(1).

Here, Nyemah's conviction became final on November 15, 2022 (fourteen days after the court issued final judgment), making the § 2255(f)(1) one-year deadline November 15, 2023.[6] *See Fletcher*, 858 F.3d at 504; 22-CR-40003, Docket 59. Even applying the prison mailbox rule, Nyemah filed his instant

---

[6] Even though the court amended Nyemah's judgment on March 2, 2023 pursuant to a Rule 35 motion, 22-CR-4003, Docket 77, such amendment does not reset the one-year clock on Nyemah's challenge to his underlying convictions because "a judgment of conviction that includes [a sentence reduced from a rule 35 motion] constitutes a final judgment for all other purposes." 18 U.S.C. § 3582(b); *see also Byers v. United States*, 561 F.3d 832, 835 (8th Cir. 2009); *United States v. Olvera*, 775 F.3d 726, 729 (5th Cir. 2015).

9

petition at the earliest on March 18, 2024 (the date prison officials post-marked his petition). *See* Docket 1 at 6; *Grady*, 269 F.3d at 916-17 (applying prison mailbox rule to 2255 petitions and looking to operative Federal Rule of Appellate Procedure in determining the date that applied); Fed. R. App. Proc. 4(c)(1)(A)(ii) (explaining that postmark stamp can constitute date of filing). Because March 18, 2024, is after November 15, 2023, Nyemah's petition is untimely under § 2255(f)(1).

Nyemah's petition is also untimely under § 2255(f)(4). Under § 2255(f)(4), the clock begins ticking on the date in which the facts supporting a claim or claims presented could have been discovered through the exercise of due diligence. Section 2255(f)(4) concerns the discovery of facts rather than such facts' legal significance. *See Martin v. Fayram*, 849 F.3d 691, 697 (8th Cir. 2017) ("That [petitioner] may not have recognized the legal significance of these facts at the time they occurred . . . does not mean he was not actually aware of the vital facts supporting a Sixth Amendment claim[.]"); *see also Hasan v. Galaza*, 254 F.3d 1150, 1154 n.3 (9th Cir. 2001).

Here, by no later than Nyemah's change of plea hearing on July 21, 2022, Nyemah had all the facts he needed to be on notice that his lawyer was ineffective. On July 21, 2022, Nyemah knew he pleaded guilty to 18 U.S.C. § 922(j). *See* 22-CR-40003, Docket 32 ¶ 3 (indicating Nyemah would plead guilty to 18 U.S.C. § 922(j)). And during this change of plea hearing, Nyemah stated that he knew was not a citizen. Because Nyemah's change of plea hearing was July 21, 2022, his one-year deadline under § 2254(f)(4) was July

10

21, 2023, even earlier than the November 15, 2023 deadline under § 2255(f)(1). 22-CR-40003, Docket 57. As a result, Nyemah's petition that was filed in March of 2024 is untimely under § 2244(f)(4). Docket 1.

The court acknowledges that Nyemah may not have known that he would definitely be subject to deportation at the time of his change of plea hearing or sentencing hearing. The court also recognizes that, assuming the veracity of Nyemah's petition as it must, that Nyemah did not receive a notice to appear until June 2023 or a final removal order until December 19, 2023. *Id.* at 2. But these later developments are not facts, and instead are legal consequences arising from the fact that Nyemah was a non-citizen who pleaded guilty to an aggravated felony. *See United States v. Nunez*, 31 F.4th 861, 866-67 (4th Cir. 2022) (concluding petitioner's knowledge that he had an aggravated felony conviction triggered § 2255(f)(4)'s limitations period); *United States v. Aholelei*, 2017 WL 6559755, at *13 (D. Haw. Dec. 22, 2017); *United States v. Deptula*, 2016 WL 7985815, at * 7 (D. Vt. 2016); *Chang-Cruz v. Hendricks*, 2013 WL 5966420, at *3 (D. N.J. Nov. 7, 2013). Thus, even if Nyemah did not realize he would indeed be deported, such unawareness does not impact the deadline under § 2255(f)(4). Furthermore, even if Nyemah's knowledge that he could be deported is relevant to determining the starting point under § 2255(f)(4), Nyemah knew he could be deported on the date of his change of plea hearing, July 21, 2022, because the court (and Magistrate Judge Duffy) so advised. In short, Nyemah's § 2255 petition is untimely under both § 2255(f)(1) and § 2255(f)(4).

Though Nyemah's petition is untimely, section § 2255(f)'s one-year deadline is not jurisdictional, so the court must still determine whether he is entitled to equitable tolling. *See Odie v. United States*, 42 F.4th 940, 946 (8th Cir. 2022). Equitable tolling is only available in a narrow set of circumstances. *Burks v. Kelley*, 881 F.3d 663, 666 (8th Cir. 2018). "To receive the benefit of equitable tolling, a litigant must demonstrate both that some extraordinary circumstance prevented him from filing a timely motion and that he diligently pursued his rights before filing." *United States v. Mendez*, 860 F.3d 1147, 1151 (8th Cir. 2017). While a petitioner need not act with maximum diligence to be entitled to equitable tolling, he still must act with "reasonable diligence." *Muhammad v. United States*, 735 F.3d 812, 816 (8th Cir. 2013).

Here, assuming Nyemah's lawyer improperly failed to advise him of the relevant immigration consequences, Nyemah nevertheless knew he could have been deported at his change of plea hearing on July 21, 2023. 22-CR-40003, Docket 40. This is not a case where Nyemah's lawyer affirmatively told him he faced no chance of deportation. And even if Nyemah's lawyer did so affirmatively misadvise, Nyemah received a notice to appear sometime in June 2023. Docket 1 at 2. Thus, Nyemah knew he was actively facing deportation proceedings no later than June 2023. At that point, Nyemah still had at least four and a half months to timely file a petition by his November 15, 2023, deadline under § 2255(f)(1).

Nyemah has not alleged any extraordinary circumstance that took place during this four-and-a-half-month window that explains why he was prevented

12

from filing a petition. *See also Vargas v. United States*, 2019 WL 451344, at *3-4 (C.D. Cal. Feb. 5, 2019) (holding that even if petitioner acted diligently in filing a petition, equitable tolling did not apply because petitioner "was aware of the possibility of deportation when he pleaded guilty" and "nothing extraordinary stood between Petitioner and the filing of his petition on time"). He does not allege, for example, that ICE officials did not allow him to file a petition, that he was incapacitated due to a medical issue, or any other excuse. Instead of filing a petition within this four-and-a-half-month timeframe between the time Nyemah received the notice to appear and his November 15, 2023, deadline, Nyemah filed this petition in March 2024, over four months *after* November 15, 2023 (which is at least eight and a half months after Nyemah had received the notice to appear). *See* Docket 1. Without an extraordinary circumstance preventing him from filing a petition, Nyemah cannot meet his burden to prove he was reasonably diligent as required for equitable tolling to apply. *See Muhammad*, 735 F.3d at 816; *Tacata v. United States*, 2007 WL 1303018, at *3 (D. Haw. May 2, 2007) (noting that non-citizen's receipt of notice of removal came "nearly three months" prior to § 2255 deadline and reasoning such delay did not justify equitable tolling); *Hammad v. United States*, 2007 WL 186518, at *1 (N.D. Ind. Jan. 19, 2007) (non-citizen's receipt of notice of removal within a month of habeas deadline did not justify equitable tolling).

Nyemah argues that "[o]ne of the main reasons why [he] did not file a § 2255 was first because [he] was not aware of [his] attorney's constitutional

13

duty to advise [him] of the adverse immigration consequences of [his] plea and [his] removal order was not final until December 19, 2023[.]" Docket 8 at 5. But generally, a petitioner's ignorance of the law is insufficient to justify equitable tolling. *See Kreutzer v. Bowersox*, 231 F.3d 460, 463 (8th Cir. 2000) ("Even in the case of an unrepresented prisoner alleging a lack of legal knowledge or legal resources, equitable tolling has not been warranted."). And although Nyemah did not know (and could not have known) of his final removal order until December 19, 2023, Nyemah was already on notice that he was in deportation proceedings as of June 2023. Docket 1 at 2. Nothing about Nyemah's final removal order presents any new information about which he did not already have notice. Thus, the court finds that Nyemah is not entitled to equitable tolling.

## IV.  Certificate of Appealability

When a district court denies a petitioner's § 2255 motion, the petitioner must first obtain a certificate of appealability before an appeal of that denial may be entertained. 28 U.S.C. § 2253(c)(1)(B); *see also Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). This certificate may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A "substantial showing" is one that proves "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Stated differently, "[a] substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the

14

issues deserve further proceedings." *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). Nyemah has not made a substantial showing that his claims are debatable among reasonable jurists, that another court could resolve the issues raised in his claims differently, or that a question raised by his claims deserves additional proceedings. Thus, a certificate of appealability is not issued.

**V.    Conclusion**

Because the record conclusively shows that Nyemah filed his petition untimely and that he is not entitled to equitable tolling, the court finds Nyemah is not entitled to an evidentiary hearing, adopts the Report's recommendation as amended, and dismisses Nyemah's petition. *See Roundtree*, 751 F.3d at 925. In doing so, the court sympathizes with the undoubtful stress and anxiety that comes with being deported from this country, especially because Nyemah appears to have lived in the United States since he was less than one year old. *See* Docket 48 at 10-11. The court also does not take lightly Nyemah's vulnerable status as a non-citizen and his claims that his lawyer never advised him that he faced mandatory deportation, which if true, is clearly deficient. *See Padilla*, 559 U.S. at 360, 369. But the court has no discretion to consider the merits of Nyemah's untimely petition, and instead must dismiss it as time-barred under § 2255(f). *See Grady*, 269 F.3d at 919. As a result, it is ORDERED that:

    1) The Report and Recommendation (Docket 4) is adopted as amended;

    2) Nyemah's objections (Docket 8) are overruled;

15

3) Nyemah's petition is DISMISSED without need for an evidentiary hearing; and

4) A certificate of appealability is DENIED.

DATED June 13, 2024

                              BY THE COURT:

                              */s/ Karen E. Schreier*
                              KAREN E. SCHREIER
                              UNITED STATES DISTRICT JUDGE